## Case No. 2,600.

### CHAPIN v. SIGER et al.

[4 McLean, 378.][1]

Circuit Court, D. Michigan. June Term, 1848.

BILL OF LADING — PAROL EVIDENCE —PROOF BY AGENT—NOTICE TO PRODUCE — PROOF OF DOCUMENTS —DEPOSITIONS—TROVER—DEMAND — CONVERSION — UNAUTHORIZED SALE BY CONSIGNEE.

1. An agent is a competent witness to prove what he did as agent. The court held that a bill of lading could not be contradicted by parol. But, that evidence might be given that the consignee had notice that the goods belonged to a person different from the person named in the

[1] [Reported by Hon. John McLean, Circuit Justice.]

bill. And that a corrected bill of lading was forwarded to the consignee.

2. Chapin gave instruction to defendant not to sell the property, but to store it until it would command better prices. A notice at the trial to produce an original letter or paper, will not be enforced unless the paper be in the possession of the party or his counsel.

3. A letter press copy, made at the same time, can not be received as an original paper.

4. Depositions to contradict a witness will not be received unless the question as to the fact was distinctly put to the witness.

[Cited in Conrad v. Griffey, 16 How. (57 U. S.) 47.]

5. A demand and refusal, or an actual conversion, necessary to sustain an action of trover.

6. When a sale is made in disregard of instructions, except for advances, the consignor may recover damages.

J. M. Howard, for plaintiff.
Bates & Watson, for defendants.

OPINION OF THE COURT. This is an action of trover for two hundred and three barrels of flour, which belonged to plaintiff. Plea, not guilty. A jury being sworn, Jeremiah S. Littlejohn was offered as a witness, and was objected to by defendants' counsel, on the ground of interest. He and his partner were shippers of the flour, and if he shall now be permitted to prove a conversion of the flour by the defendant, it may relieve the witness from responsibility. But the court held, that the witness and his partner acted as agents in shipping the flour, and there was no preponderating influence which would exclude him from giving testimony. In England the doctrine has been departed from, so far as to admit a witness interested, if not a party on the record, leaving his credit with the jury. But this witness has no interest which can exclude him. The witness states that he was acquainted with the firm of Siger, Brown & Co., of Buffalo. The two hundred and three barrels of flour were shipped from Detroit, to defendants, 19th November, 1846, on board the propeller St. Joseph. The witness was asked who was the owner of the property; which question the defendant objected to, because the ownership is shown by the bill of lading. 2 Starkie, Ev. 283, "where goods are shipped on account of the consignee, the property must be recognized as being in him." 2 Camp. 36. Goods shipped to consignee, consignor can not maintain an action for them. [Creery v. Holly] 14 Wend. 26; Abb. Shipp. 249; 4 Cow. & H. Notes, 1439. The court held that the bill of lading can not be contradicted. The property was shipped by Littlejohn & Co.; but the court permitted evidence that the consignee had notice the property belonged to Chapin, and that a corrected bill of lading was forwarded, which was admitted in evidence, requesting defendants to enter the flour on account of Chapin. In January 7, 1847, the defendants were told by witness that they had sent the shippers an account of the sales of this identical flour, and they ad-

mitted the fact; but witness objected, because it was in pursuance of orders given. Defendants admitted that they had received a letter informing them that Chapin owned the flour. In March or April, 1847, heard Chapin make a demand of the flour, 203 barrels, on a ware-house receipt; this was at Detroit; defendant said he was away from home, and did not know whether such a shipment had been made. Chapin demanded satisfaction; Siger refused to pay. This was before suit was commenced. Witness never did, in any way, satisfy the sale of the flour. At Buffalo, witness told the defendants that the flour belonged to Chapin, who had instructed witness, etc., not to have it sold, but to store it until better prices. Defendants said in the multiplicity of business they had overlooked the instruction. The letter of defendants giving an account of sales, was dated the 14th of December, 1846. The defendants admitted that the account included all the flour sent by the St. Joseph, 19th of November, 1846. Flour, in 1846, at Buffalo, was worth from $3.75 to $4. Some sales were made for $5. A letter press copy was offered in evidence, of a letter dated 31st December, 1846, to defendants. Notice was given to the defendants' counsel to produce the original. The counsel averred that they had not the original, and had never seen it. The court held, the notice was not reasonable, and that the defendants were not to be required to produce the original, unless it were in their possession, or in possession of their counsel, under such a notice. And that a letter-press copy, though written at the same time, could not be received as an original.

The defense made, was, that before the bill of lading was corrected, showing that the 203 barrels were owned by Chapin, defendants accepted on the shipment, bills drawn 19th November, 1846, exceeding the receipts for the sale of the flour, several hundred dollars. A bill, amounting to two thousand seven hundred and fifty-two dollars, was drawn on the shipment, the day it was made, which was accepted and paid, before the letter, correcting the error, was received. Afterward an advance was made on the same flour, on claim of Chapin. Depositions were offered to be read to impeach the statements of Littlejohn, by proving certain conversations with the defendants, respecting this transaction. The plaintiff's counsel objected, because, Littlejohn, when under examination, had not been asked in regard to these conversations. The court sustained the objections, but permitted Littlejohn to be called by the defendants, and the questions were asked him. The account rendered was proved to be correct; and that Littlejohn asked an advance, and, adding a few barrels, he obtained $650. Littlejohn said that they would be safe in making a further advance, as flour had risen, and that he was authorized to dispose of the 203 barrels. Another

witness states that the draft of $2,750 was accepted before the error was corrected. On the part of the defendants it is insisted, to sustain this action, the plaintiff must show a demand of the 203 barrels of flour. 2 Saund. Pl. & Ev. 414 and 883; 1 Camp. 429. And that the party on whom the demand is made must have it in his power to deliver the property. 2 H. Bl. 135. That excuses for not delivering, is not a conversion—the refusal to deliver must be absolute, or there must be a tortious conversion. 5 Barn. & C. 248. It is also contended if the defendants were in advance when the two hundred and three barrels were received, defendants had a lien on the flour, and they could retain it against the plaintiff. That the factor has a general lien for any balance.

The court instructed the jury that, to support the action, there must be a demand and refusal, or an actual conversion of the property, and that they must find the right of property was in the plaintiff. And the court said to the jury, that it did not appear, from the evidence, that any draft had been drawn against the two hundred and three barrels of flour, or that Chapin had received the proceeds of the same. From the defendants' letters, dated the 12th and 19th of February, 1847, the draft for $2,752, was drawn against other property, which was received about the same time, and perhaps, in the same vessel, with the two hundred and three barrels. If the jury shall find the facts as suggested by the court, and they are referred to the evidence, and they shall be satisfied that there was a demand and refusal to deliver the property, and that it was not sold by the plaintiff's orders, the defendants being notified that the plaintiff was the owner of the flour, and that they were not in advance to the plaintiff, their verdict would be for the plaintiff for such damages as shall be equitable. That the plaintiff would be entitled to the rise in the market, for a reasonable time after the demand was made. That if the sale was wrongfully made, at a time when the article was depressed, the defendants having no right or authority to sell, would not fix the rule of damages for the plaintiff.

The jury found for the plaintiff. A motion for a new trial was made and overruled.